UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-223 (JRT/DJF)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL BRUCE GILLIS, )<br>)<br>Defendant. ) | **GOVERNMENT'S POSITION REGARDING SENTENCING** |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its position regarding sentencing of Defendant Michael Bruce Gillis. For the reasons that follow, the United States asks the Court to sentence Mr. Gillis to 188 months in prison, to run concurrently with his state sentence, followed by a 20-year term of supervised release.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

**A. Previous Conduct.**

Minor Victim B reported that, in approximately 2021, he had sexual encounters with the defendant. (Presentence Investigation Report ("PSR"), ECF No. 41, ¶ 32.) The two met online. (*Id.*) Minor Victim B informed the defendant of his age. (*Id.*) Nevertheless, the two exchanged sexual photographs. (*Id.*) The defendant and Minor Victim B also discussed meeting in person. (*Id.*) The defendant then went to Minor Victim B's residence when

Minor Victim B's parents were not home. (*Id.*) The two performed oral sex on each other. (*Id.*) The defendant then penetrated Minor Victim B with his penis. (*Id.*) Minor Victim B told the defendant that it hurt and to stop. (*Id.*) The defendant said something to the effect of "don't worry, it will feel good." (*Id.*)

In August of 2024, law enforcement officers in Hennepin County, Minnesota were running an undercover detail. (PSR ¶ 39.) The defendant responded to an advertisement and engaged in a conversation with an undercover officer posing as a 15-year-old boy. (*Id.*) Undeterred, the defendant admitted he "love[d] making out, body contact, cuddling, licking, body worship, jerking, eating a**, [and] sucking." (*Id.*) As the conversation continued, the defendant and undercover discussed meeting in person. (*Id.*) The undercover asked the defendant to bring a specific energy drink with him when they met. (*Id.*) The defendant arrived at the address with the energy drink as well as a bottle of lubricant. (*Id.*) The defendant was charged in Hennepin County in August of 2024, and the case remains pending. (*Id.*)

In October of 2024, law enforcement officers in Polk County, Florida were running an undercover detail. (PSR ¶ 40.) The defendant messaged an undercover detective. (*Id.*) The defendant's profile displayed the quote: "Be chill, looking for younger guys." (*Id.*) The undercover told the defendant he was 14 years old. After a few more messages, the defendant said "I wish you didny yell me that . . . Cause then I wouldn't feel weird about thinking ur super hot."

2

(*Id.*) The defendant continued to communicate with the undercover about cuddling, being horny, and masturbation. (*Id.*) The defendant and undercover discussed meeting in person. (*Id.*) The defendant arrived at the meeting address with a condom, a bottle of lubricant, and other items. (*Id.*) The defendant was charged in Polk County in October of 2024, and the case remains pending. (*Id.*)

### B. The Instant Offense.

The United States agrees with and incorporates by reference the facts set forth in the PSR (ECF No. 41 ¶¶ 7-13), as well as the factual basis from the Plea Agreement (ECF No. 32 ¶ 2).

On March 2, 2025, the defendant was chatting online with 15-year-old Minor Victim A. Posing as "Nick Miller," the defendant began grooming Minor Victim A for an in-person sexual encounter. The defendant admitted that he "liked being dom" and "like[s] younger guys." Minor Victim A told the defendant he was young. Undeterred, the defendant said that "lowkey turns [him] on." Minor Victim A said he was still in high school. The defendant admitted that he had a "friends with benefits" for two years who was still in high school. The defendant and Minor Victim A soon exchanged sexually explicit messages. The defendant expressed his sexual interest in Minor Victim and said he would "want [Minor Victim A] on the regular." The two exchanged images of their genitalia. The defendant responded saying "I need you so bad."

3

The defendant and Minor Victim A agreed to meet at the defendant's residence. The defendant offered to send an Uber to pick up Minor Victim A since he was too young to drive. Minor Victim A agreed. The two stayed in close communication until Minor Victim A exited the Uber in the defendant's neighborhood and the defendant provided detailed directions to ensure Minor Victim A arrived at the correct residence.

At the defendant's residence, the defendant sexually assaulted Minor Victim A. Specifically, the defendant penetrated Minor Victim A's anus with his penis. The defendant did not use protection. When the defendant fell asleep, Minor Victim A was able to escape from the residence.

Meanwhile, Minor Victim A's family had reported him missing to the police. Minor Victim A's family reviewed his electronic devices and discovered the defendant's messages. By the time Minor Victim A escaped from the residence on foot, he was located by law enforcement a short distance from the residence. Later, Minor Victim A went to the hospital for a sexual assault examination. The examination substantiated the report of sexual penetration.

The defendant was charged in March of 2025. On September 8, 2025, he pleaded guilty to one count of enticement of a minor. (ECF Nos. 31-32.)

### C. The Presentence Investigation Report ("PSR").

The Government has received the PSR and agrees with the facts and conclusions set forth therein.

Due to the nature of the offense, the base offense is 28. (PSR ¶ 19; U.S.S.G. § 2G1.3(a)(3)). Three separate two-level enhancements apply because the defendant knowingly misrepresented his identity to persuade, induce, entice, coerce, or facilitate the travel of the minor to engage in prohibited sexual conduct; the offense involved the use of a computer or interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of the minor person to engaged in prohibited sexual conduct; and the offense involved a sexual act and sexual contact. (PSR ¶¶ 20-22[1]; U.S.S.G. § 2G1.3(b)(2)(A), (b)(3)(A), (b)(4)(A)(i)). Finally, a five-level increase applies because the defendant engaged in a pattern of activity of prohibited sexual conduct. (PSR ¶ 27; U.S.S.G. § 4B1.5(b)(1)). Mr. Gillis has accepted responsibility for his crime such that a three-level decrease applies. (PSR ¶¶ 28-29.) The total offense level therefore comes to 36. (PSR ¶ 30).

Mr. Gillis has one prior conviction for possession/sale of a small amount of marijuana. (PSR ¶ 35.) That conviction does not accrue any criminal history

---

[1] Paragraph 20 of the PSR contains the correct citation but incorrect description of the enhancement. The applicable specific offense characteristic at U.S.S.G. § 2G2.1(b)(2)(A) involves the defendant's misrepresentation of his identity. The parties agreed that this enhancement applies. (Plea Agreement ¶ 7(b)).

points. (*Id.*) Accordingly, he falls into criminal history category I. (PSR ¶ 37; U.S.S.G. ch. 5, part A.) As a result, the advisory Guideline term of imprisonment ranges from 188-235 months. (PSR ¶ 74). The statutory mandatory minimum term of imprisonment is 120 months, and the maximum term is life. 18 U.S.C. § 2422(b).

### D. Victim Restitution.

In the plea agreement, the defendant indicated that he understood and agreed that he owed mandatory restitution to the victims of his crimes. (Plea Agreement ¶ 13.) The defendant agrees to pay $2,494.57 to Minor Victim A. To date, Minor Victim B has not sought restitution as allowed.

## II.   THE GOVERNMENT'S SENTENCING RECOMMENDATION

In addition to determining the defendant's Sentencing Guidelines range as required by 18 U.S.C. § 3553(a)(4), this Court must assess the other applicable sentencing factors under § 3553(a) of federal sentencing law. Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the need to avoid

unwarranted sentencing disparities; and the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Based upon a balance of these factors, the United States respectfully submits requests that the Court sentence Mr. Gillis to a term of 188 months' imprisonment.

### A. The Nature and Circumstances of the Offense, the Need to Reflect the Seriousness of the Offense, and the Impact on the Victims.

The nature and circumstances of the offense are serious and require a commensurate sentence. The defendant has displayed a pattern of escalating sexual misconduct. The resulting impact on victims is devastating. Sexual abuse inflicts immense and long-lasting harm on its victims. Child sex abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana*, 554 U.S. 407, 468 (2008) (Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (citation omitted)). "The victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood. . . ." *Id.* at 435 (citations omitted). "Sexual assault is a terrifying crime which leaves its victims with physical, emotional, and psychological scars and affects everyone around them." H.R. Rep. No. 107-527 at 2 (2002).

7

Children rarely fully recover from the trauma of sexual abuse. A. Perry and D. DiLillo, *Child Sexual Abuse*, Encyclopedia of Domestic Violence 147 (N. A. Jackson ed., 2007).

The aggravating circumstances inherent in the nature and circumstances of the crime and the impact of the victims warrant a lengthy sentence.

**B. The Defendant's History and Characteristics.**

The defendant's background is unlike many defendants who appear before this Court. He has lived what many would view as a life of privilege and opportunity. He grew up in a two-parent household and witnessed a healthy relationship between his parents. (PSR ¶ 43.) He experienced financial stability and was not exposed to violence or drug use. (*Id.*) The defendant reports that he maintains a close relationship with his immediate family. (PSR ¶ 42.)

Mr. Gillis describes being a victim of sexual assault himself. (PSR ¶ 44.) He has the United States' deep sympathy for having had to endure such a violation. But after enduring that abuse himself, and knowing first-hand its wide-ranging and deeply negative effects, he—perhaps more than any other person—should never have turned that abuse on other innocent children.

There is little in the defendant's background that should mitigate the sentence he receives.

### C. To Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public.

The recommended sentence also accounts for the need for the sentence to protect the most vulnerable members of the community from further crimes of the defendant. This was not a single mistake—the defendant has demonstrated a pattern of preying on children online, exchanging sexually explicit photographs and messages with them, and grooming them to meet him in person. Upon meeting, the defendant sexually abuses them. Sex offenses irrefutably and irreparably harm the victims and generate fear in the community. Mr. Gillis's serious behavior should be met with a meaningful custodial sentence.

Specific deterrence is important in this case. Mr. Gillis has proven that he is undeterred by recent arrests and pretrial sanctions. Despite two, recent arrests, the defendant continued his pattern of sexual misconduct when he committed the instant offense. Not only that, the defendant's sexual misconduct continues to escalate. A significant sentence is necessary to deter Mr. Gillis and ensure that no other children suffer any abuse by him.

A Guidelines sentence in this case would also serve as an important general deterrent. The Court has the opportunity now to send a strong message to offenders who, like the defendant, prowl the internet for vulnerable, young, victims they can manipulate and ultimately, sexually abuse.

A sentence of 188 months is appropriate as both an individual and a general deterrent, and would protect the public and promote respect for the law.

**D. Supervised Release Term.**

In addition to his prison sentence, the Government requests the defendant serve a 20-year term of supervised release. "Studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes. Moreover, the recidivism rates do not appreciably decline as offenders age." *E.g.*, H.R. Rep. No. 107-527 at 2 (2002). Therefore, a 20-year term of supervised release is necessary to continue protecting the public from Mr. Gillis and to ensure his compliance with the law.

### III. CONCLUSION

For the reasons set forth above, the United States respectfully recommends that the Court impose a sentence of 188 months' imprisonment to run concurrently with his state sentence, followed by a 20-year term of supervised release to follow.

Dated: December 24, 2025            Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/ Mary S. Riverso*

 BY:  MARY S. RIVERSO
Assistant United States Attorney